UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                      Case No. 3:21-cr-214

         Plaintiff,

     v.                                                 MEMORANDUM OPINION
                                                         AND ORDER

Ronald Lee Jenkins,

         Defendant.

## I.    INTRODUCTION

Defendant Ronald Jenkins filed a motion to dismiss the charges against him, arguing the government violated his due process rights under the Fifth and Fourteenth Amendments when it failed to retain dash camera or security camera recordings of his traffic stop and subsequent arrest and interrogation. (Doc. No. 17). The government filed a brief in opposition to the motion, (Doc. No. 18), and Jenkins has filed a brief in reply. (Doc. No. 19). I held an evidentiary hearing on March 16, 2022,[1] during which the parties presented evidence and offered argument in support of their positions. For the reasons stated below, I deny Jenkins' motion.

## II.    BACKGROUND

On February 14, 2021, Travis Brewer, a patrol officer with the Maumee Police Division, observed a white SUV traveling at a high rate of speed through the parking lot of the Woodspring

---

[1] The hearing initially was scheduled for November 3, 2021. I continued the hearing at Jenkins' request, so that he was able to obtain previously-requested discovery materials, and subsequently continued the hearing two additional times due to a surge of Covid-19 infections locally and regionally.

Suites Hotel on Arrowhead Road in Maumee, Ohio.  (*See* Gov't Ex. 1).  The driver of the white SUV then made an illegal right turn onto Indian Wood Circle before failing to stop behind the stop bar before making a right turn onto Dussell Drive.  Brewer stopped the vehicle as the driver prepared to merge onto a nearby interstate.

The driver identified himself as Ronald Lee Jenkins and produced a Minnesota driver's license.  Brewer determined Jenkins had an active warrant for his arrest, issued by a court in another state, and took Jenkins into custody.  Jenkins was the only occupant of the vehicle, so Brewer and another officer conducted an inventory search of the SUV before it was towed to the police impound lot.  During the search, the officers located a box of blank payroll checks, several payroll checks with writing on them, Social Security cards with different names and numbers on them, several military ID cards and drivers license cards with different names but the same photograph, several blank credit cards, and a credit card writer.[2]  (*See id.* at 1).

Jenkins also had a Woodspring Suites room key in his possession.  He told the officers he had a dog in his hotel room and asked them to get the dog from his room.  (*Id.* at 2).  While retrieving the dog from the room, officers observed two printers on a desk, as well as a shoebox and other property.  Patrick Tucker, a detective with the Maumee Police Division, sought and obtained a search warrant for Jenkins' hotel room.  (*Id.* at 1-2).

Meanwhile, Jenkins was taken to the Maumee Police Division for processing following his arrest.  Tucker read Jenkins his *Miranda* warnings.  Jenkins declined to participate in an interview.

On February 18, 2021, Jenkins was charged by complaint with one count each of (a) counterfeited and forged securities; (b) unlawful possession of a document or authentication feature;

---

[2]  The search ultimately uncovered "approximately 13 fraudulent Social Security Cards, approximately 183 forged Armed Forces of the United States identification cards, approximately 10 forged South Carolina Drivers Licenses, a box of blank checks, a credit card skimmer, a Lenovo laptop computer, giftcards, several white plastic cards, and a Bowie hunting knife." (Doc. No. 17 at 2).

(c) possession with intent to use/transfer five or more false ID documents; and (d) producing, using, or trafficking in a counterfeit access device. (Doc. No. 1). He later was indicted by a grand jury on: one count of possession with intent to unlawfully use five or more false identification documents, in violation of 18 U.S.C. §§ 1028(a)(3), (b)(2)(B), and (c)(1); one count of unlawful production of identification documents, in violation of 18 U.S.C. §§ 1028(a)(1), (b)(1)(A)(i), (b)(1)(B), and (c)(1); and three counts of possession of counterfeit securities, in violation of 18 U.S.C. § 513(a). (Doc. No. 13).

Jenkins' initial appearance took place on February 19, 2021. During that hearing, after attorney Mark Geudtner was appointed to represent Jenkins, Jenkins accused officers of searching his car illegally. (*See* Doc. No. 17 at 4). Counsel then requested discovery, including a specific request for "all dashcam, bodycam and other audio and/or video recordings relating to the stop, arrest and statements of [Jenkins]." (Doc. No. 17-1 at 2). The government's response to that request (stating there were no dash camera or interview recordings available) led to the March 16, 2022 evidentiary hearing.

At the time of the February 14, 2021 traffic stop, the Maumee Police Division was transitioning from one video system to another. Under both systems, video recordings from the patrol vehicles' dash cameras (and, under the new system, body cameras) are wirelessly uploaded to a computer server when the vehicle and officer is within a certain radius of the police station. The officer assigns each recording a code based upon the nature of the traffic stop, and the recording is automatically preserved for a predetermined length of time consistent with that code. Upon returning to the police station, officers typically park their vehicles in the station's sally port to allow any recordings to upload to the server.

But, on and around February 14, 2021, those recordings either were not automatically uploaded or were not retained on the server. Tucker testified he and other Maumee police officers

3

were not aware of this problem at the time it occurred; Tucker first learned of the issue when he attempted to fulfill Jenkins' discovery request for the dash camera recording.

Jenkins seeks dismissal of the charges against him, arguing the government's failure to preserve and disclose the recordings violates his constitutional right to due process. (Doc. No. 17).

### III.  ANALYSIS

The Due Process Clause protects a criminal defendant's right to obtain relevant, material evidence that is within the government's possession. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to establish a *Brady* violation, Jenkins must establish "'the prosecutor suppressed evidence; that such evidence was favorable to the defense; and that the suppressed evidence was material.'" *Gillard v. Mitchell*, 445 F.3d 883, 894 (6th Cir. 2006) (quoting *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000) (further citation omitted)).

I conclude Jenkins is not entitled to the relief he seeks because he has not met his burden of establishing "the government possesses information which [Jenkins] does not." *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). Both Tucker and Brewer testified they did not know the dash camera recording from Brewer's vehicle was not uploaded and preserved. Further, they both testified that they assumed exactly the opposite – that the recording was automatically uploaded pursuant to the Maumee Police Division's policies and standard practices. I observed both officers as they testified and found their testimony to be credible.

Moreover, even if I were to assume Jenkins could establish the first *Brady* prong, he has not offered any basis upon which I might conclude that the unpreserved recordings contained favorable, material evidence. Instead, he has suggested only that it is "possible" the dash camera recording contained "potentially exculpatory" evidence. (Doc. No. 17 at 19). Jenkins fails to show how the absence of this recording might prohibit him from receiving a fair trial.

Relatedly, it is well established that "there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question." *Carter*, 218 F.3d at 601 (citations omitted). Jenkins was present for all of the events which would have been depicted in the dash camera and police station recordings. He has offered no reason to suggest that he does not know the essential facts which would permit him to substantiate his claim that the officers searched his vehicle illegally. (*See* Doc. No. 17 at 19).

Finally, Jenkins also argues "[t]he reported absence of any interrogation video deprives the Defendant of any opportunity to dispute the authenticity of the alleged 'spontaneous utterances'" he made after invoking his *Miranda* rights. (Doc. No. 19 at 3). Neither the relevance nor the materiality of these alleged utterances is clear at this point in the case. Jenkins does not dispute that the Maumee Police Division did not rely on these alleged statements to stop his vehicle or to obtain a search warrant for his hotel room. Therefore, the government's failure to preserve and produce the video and audio recordings of those statements does not constitute a basis to dismiss the charges against Jenkins. To the extent Jenkins' motion implicates the possibility of suppressing those alleged statements, I conclude that matter is one better raised at a later time and deny Jenkins' motion without prejudice only as to that basis.

## IV.  CONCLUSION

I conclude Jenkins has not established that his due process rights were violated by the government's failure to preserve the video recording of his traffic stop and subsequent arrest. Therefore, and for the reasons set forth above, I deny his motion to dismiss. (Doc. No. 17).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

5